# CHARLESTON

## State v. Parkins.

Submitted February 26, 1907.    Decided January 21, 1908.

1. Fines—*Constitutional Law.*
    That provision of Acts of 1901, chapter 93, Annotated Code of 1906, section 2974, giving deputy game and fish wardens all fines accruing from prosecutions instituted by them for violation of game and fish laws, is unconstitutional. (p. 384.)

2. Same—*Rights and Remedy of Informer.*
    In order to entitle an informer or person prosecuting to any part of a fine imposed upon conviction under indictment his name as such must be "endorsed on or written at the foot of the indictment. before it is presented to the grand jury." (p. 387.)

Error to Circuit Court, Monongalia County.

Robert Parkins was convicted of violating the game law, and Bennett S. White, game warden, filed a petition for fines, and on denial of the same he brings error.

*Affirmed.*

TERENCE D. STEWART, MORELAND & MORELAND, and GOODWIN & REAY, for plaintiff in error.

CLARKE W. MAY, Attorney General, and C. W. CRAMER, for the State.

BRANNON, JUDGE:

Bennett S. White, as deputy game and fish warden, caused the indictment and conviction of Robert Parkins for unlawfully killing Virginia quail, and several fines imposed upon Parkins were paid into the circuit court of Monongalia county. White filed a petition in that court claiming said fines for his service as deputy warden; but the court denied his right to the fine money, and directed that it be paid to the sheriff to be accounted for to the state treasury under the law relating to fines.

A statute provides that "the deputy game and fish wardens shall receive for their services the fines accruing from such prosecutions as may be instituted by them, but no money shall be paid them out of the treasury of the state." Acts 1901, chapter 93; Annotated Code of 1906, section 2974. That statute is said to give this money to White; but there is section 5, Art. 12, of the Constitution, saying that "The Legislature shall provide for the support of free schools by appropriating thereto the net proceeds of all forfeitures and fines accruing to the state under the laws thereof." The Constitution commands that these fines go to the free schools; the act is directly to the reverse, diverting them from the free schools and giving them entire to the deputy fish wardens—a glaring conflict. Whether as the Constitution says that the "net proceeds" shall go to the free schools, the Legislature could give a portion to the deputy warden, we do not decide, as this statute gives them *all* of the fines, much or little adequate compensation or not. The schools get none of these many fines. If only a fair part were given the informant, it might be said that such part is cost, and the residue "net

proceeds." 16 Am. & Eng. Ency. L. (2d Ed.) 324; 19 Cyc. 562; *Southern Express Co.* v. *Com.*, 92 Va. 59. But when all is taken, how can we consider it cost? *Dutton* v. *Fowler*, 27 Wisconsin, 427, so holds. A different conclusion might cripple the schools.

And, then, too, there is Code, chapter 36, section 2, providing that though a law allow an informer or prosecutor to have part of a fine, the whole shall go to the .state for the support of the schools, unless the name of the prosecutor or informant be written or endorsed on the indictment or at its foot. White's name was not so endorsed or written on the indictment. True, he was an officer; but he acted as an informant or prosecutor. The spirit of the law is the same in his case. Its reason and purpose applicable to him. The statute would seem to deny White's right. White sought out witnesses, gave their names to the prosecuting attorney and on their evidence indictments were found; but the grand jury did not record him as prosecutor, nor did the court. The record does not accord him the certificate of having been informer or prosecutor. Not every one who takes same steps to further a prosecution can claim the fine. He must bear this character in the record, under this statute. What the purpose in requiring the name of the informant to be on the indictment at the time it is made, at the very start of the prosecution? Some purpose. It is the attestation of the grand jury that the informant is entitled to be treated as such. The court is not required to investigate by evidence outside the record to learn whether the party is entitled to share in the fine—so as to declare part for his use. If the auditor could allow it, would he have to search out the facts? If application be made to the court for part of the fine, perhaps years after the judgment, when the fine has been collected, is the court to examine into the facts to determine whether the party is entitled? It seems to me that the indictment must attest the informant's right. The statute says so and for good reason. Indeed, I think that the purpose of the statute is to let the court know that part of the fine goes to the informant, so that it may certify his right. Indeed, while the judgment should be for the state, the court should declare that recovery as to part is for the use of the informant. Where a statute gave penalty against a railroad com-

pany for failure to blow a whistle at crossings, one half to go
to the prosecuting witness "and the other half to go to the
state," it is held proper to give judgment in the name of the
state, one half of the recovery for the use of the witness.
*Ill. Cent. R. Co.* v. *Tait*, 50 Ill. 48; *Ill. Cent. R. Co.* v.
*Herr*, 54 Ill. 356.

Judgment affirmed.

*Affirmed.*